**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

ROBERT SPIVEY

v.

JOHN RIVELLO[1]

CIVIL ACTION
NO. 18-1740

**PAPPERT, J.**                                              **August 15, 2023**

<u>**MEMORANDUM**</u>

A Pennsylvania state court jury convicted Robert Spivey of first-degree murder

and carrying a firearm, and he was sentenced to life in prison.  After a full round of

appeals in the state courts and the completion of state post-conviction review, Spivey

filed a Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254.  (ECF 1.)

Magistrate Judge Hey issued a Report and Recommendation recommending denial of

all nine of Spivey's claims.  (ECF 38.)  Spivey objected to the recommendation on claims

two through nine, and moved to amend his Petition to add a freestanding claim of

actual innocence.  (ECF 44, 50, 51, 55, 60, 62.)  After thoroughly reviewing the record,

the Court adopts the R&R in full, denies Spivey's motions to amend, and denies the

petition.

I

In 2013, a jury convicted Robert Spivey of first-degree murder and carrying a

firearm on the public streets.  (Trial Tr. vol. 4, 51:6–23.)  He was sentenced to life in

---

[1]      At the time Spivey filed his habeas petition, he was incarcerated at SCI-Smithfield, and Spivey
correctly named then-superintendent Eric Tice as respondent.  Since then, Spivey has been moved to
SCI-Huntingdon.  Therefore, the Court has replaced Rivello, superintendent of SCI-Huntingdon, as
the respondent in this case.  *See* Rules Governing Section 2254 Cases, Rule 2(a) (requiring state officer
with current custody of petitioner to be named as respondent).

prison without parole for the murder and a concurrent sentence of one to two years for

carrying a firearm.  On direct appeal from his sentence of conviction, the Pennsylvania

Superior Court adopted the trial court's recitation of the facts and history of the case:

> On July 7, 2011, at 7:34 p.m., at Temple University Hospital, Alonzo Guy was pronounced dead as a result of gunshot wounds, including a perforating wound to his back that injured his kidney, liver, stomach, and small bowel.  Doctor Edwin Lieberman, an expert in forensic pathology, testified that this perforating wound caused Guy's death from internal bleeding.  Guy had been shot earlier that afternoon.

> [At Spivey's trial] Jermaine Harvin testified that at the time of the shooting, he was selling PCP on the 4400 block of Cleveland Street in North Philadelphia for his cousin Guy, who he knew as Lonnie, and that he and Guy were friends with [Spivey], who he knew as Beano.  He considered [Spivey] a good friend from childhood, and his uncle has a child with [Spivey's] aunt.  Harvin had been reselling drugs for approximately a year prior to the shooting, and during some of that time, [Spivey] had been absent from the neighborhood.  However, he returned approximately six months prior to the shooting, and began selling drugs.  [Spivey] sold drugs on Cleveland Street, but not for Guy.  [Spivey], Guy, and Harvin had apparently been getting along until the night before the shooting.

> On the evening of July 6, a drug purchaser came to the corner of Cleveland Street and Cayuga Street and spoke to Guy, to say that he was going to purchase from Guy's seller, indicating [Spivey].  Guy clarified that [Spivey] was not selling drugs for him, and then directed the purchaser toward Harvin, who completed the sale.  Guy left the block shortly thereafter.

> After Guy left the block that night, [Spivey] prevented Harvin from making another sale, telling the buyers that nobody would be buying anything that night.  He then approached Harvin while holding a gun, and told him that he would be taking his and Guy's money, and that nobody would be making any more money on the block.  He also said, "I'm not playing with you all."  Harvin called Guy to warn him about [Spivey's] threat.  Guy then returned to the block and had a heated conversation with [Spivey] there.

> The next day, Harvin resumed selling drugs in the neighborhood. During the day, he made several sales on Gratz Street, one block over from Cleveland Street, in order to avoid potential surveillance from several PennDOT vehicles that were parked just past Cayuga Street nearer to (and within sight of) Cleveland.  While he was on Gratz Street, Harvin saw

[Spivey] drive by.  The PennDOT trucks left, and Harvin returned to Cleveland Street in order to sell PCP there.  At approximately 3 o'clock p.m., Guy came to Cleveland Street as well.

Shortly before the shooting, Harvin received a call from a potential buyer, and went into an alley in order to get the drugs he would need in order to complete the sale.  He was carrying a handgun in his pocket at the time.  Harvin had acquired the gun from a friend named Dwayne Marks earlier that day, after telling Marks about [Spivey's] threats from the previous night.  As Harvin was completing the sale, [Spivey] started firing toward Guy.  When Harvin pulled his gun and tried to shoot back, the gun did not fire.

Harvin heard [Spivey] fire approximately five shots, and heard Guy scream.  He also saw [Spivey] walk away from the scene of the shooting.  By the time Harvin pulled his gun to return fire, [Spivey] had finished shooting and was already leaving the scene.  Later, Harvin spoke to Marks about the gun, and Marks showed him that the gun fired when the safety was properly activated.  Later that night, Harvin found out that Guy had died as a result of the shooting.  Harvin did not see [Spivey] on the block again after that day.

Miyoshi McClellan testified that immediately prior to the shooting she was outside of her house on the 4400 block of Cleveland Street, sweeping up leftover trash from the trash collection earlier that day.  While she was sweeping, she saw [Spivey] and Guy on the block.  She went back into her house and went upstairs, and then she heard what she thought at the time were firecrackers.  Her fiancé[ ], who was downstairs, screamed her name and started from the kitchen, as he had not noticed her come back into the house and was worried that she was still outside during the shooting.  McClellan looked out the window and saw [Spivey] driving away at a high rate of speed.

Audrey Bivens–Ross, who also lives on the 4400 block of Cleveland Street, was inside her house when the shooting began.  She looked out a window and saw [Spivey] approaching the driver's side of his vehicle.  She then saw him drive away, taking a left on Cayuga Street, which is a one-way street going the other way.  Harvin, McClellan, and Bivens–Ross each testified that they did not see [Spivey] on the block again after the shooting.

Officer Robert Stott of the Philadelphia Police Firearms Identification Unit determined that all five fired cartridge casings found at the scene had been fired from the same .9 mm handgun.

*Commonwealth v. Spivey* (*Spivey II*), 2014 WL 10980149, at *1–2 (Pa. Super. Ct. Feb. 21, 2014) (quoting *Commonwealth v. Spivey* (*Spivey I*), 2013 WL 9681831, at *1–3 (Pa. Ct. Com. Pl. June 10, 2013).

The Court adopts the R&R's unobjected-to recitation of the case's procedural history:

On direct appeal, Spivey claimed:

1. There was insufficient evidence to support the verdict for first-degree murder,
2. The verdict was against the weight of the evidence,
3. The trial court erred in refusing to charge the jury on justification/self-defense and voluntary manslaughter,
4. The trial court erred in failing to permit full and fair impeachment of a Commonwealth witness, and
5. The trial court erred in failing to give a cautionary instruction regarding inappropriate and prejudicial comments by the prosecutor.

*Commonwealth v. Spivey*, No. 1244 EDA 2013, Brief for Appellant, 2013 WL 8538498 (Pa. Super. filed July 1, 2013) ("Direct Appeal Brief"). The Superior Court affirmed the judgment of conviction. [*Spivey II*], 2014 WL 10980149 . . . . Spivey did not seek further direct review.

Spivey filed a timely pro se petition and amended petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. C.S.A. §§ 9541–9551. *Commonwealth v. Spivey*, No. CP-51-CR-0000470-2012, Motion for Post Conviction Relief (Phila. C.C.P. filed Sept. 8, 2014) [("Sept. 8, 2014 PCRA Ptn.")]; *Commonwealth v. Spivey*, CP-51-CR-0000470-2012, Motion to Amend Post Conviction Petition (Phila. C.C.P. filed Oct. 1, 2014). Appointed counsel filed an amended PCRA petition arguing that trial counsel was ineffective for failing to call three witnesses[:] Tauheed Hood, Spivey's mother, and Spivey himself. *Commonwealth v. Spivey*, CP-51-CR-0000470-2012, Amended Post Conviction Relief Act Petition and Letter Brief (Phila. C.C.P. filed Jan. 6, 2016) ("PCRA Letter Brief"). Spivey retained new counsel who entered her appearance on his behalf. Docket Sheet (entry dated Jan. 22, 2016). Judge McDermott issued a Notice of Dismissal, *Commonwealth v. Spivey*, CP-51-CR-0000470, 2012, Notice Pursuant to Pennsylvania Rule of Criminal Procedure 907 (Phila. C.C.P. Mar. 8, 2016), after which retained counsel filed a motion to reconsider. *Commonwealth v. Spivey*, CP-51-CR-0000470-2012, Motion to Reconsider Denial of PCRA (Phila. C.C.P. March 28, 2016) ("PCRA Motion to

Reconsider"). Judge McDermott dismissed the PCRA petition on April 8, 2016. *Commonwealth v. Spivey*, CP-51-CR-0000470-2012, Opinion and Order (Phila. C.C.P. Apr. 8, 2016) (["PCRA Op. I"]) and signed docket entry (Phila. C.C.P. April 8, 2016).

After filing a notice of appeal, *Commonwealth v. Spivey*, CP-51-CR-0000470-2012, Notice of Appeal (Phila. C.C.P. filed Apr. 27, 2016), Spivey's counsel sought to withdraw from the case. *Commonwealth v. Spivey*, CP-51-CR-0000470-2012, Motion to Withdraw Representation and for Appointment of Counsel (Phila. C.C.P. filed Apr. 27, 2016). Judge McDermott granted the motion to withdraw, *Commonwealth v. Spivey*, CP-51-CR-0000470-2012, Order (Phila. C.C.P. Apr. 29, 2016), and substitute counsel entered his appearance. Docket Sheet (entry dated May 3, 2016).

On PCRA appeal, Spivey sought to proceed *pro se*, and the Superior Court remanded the case to conduct a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998), to determine if Spivey's waiver of counsel was knowing, intelligent, and voluntary. *Commonwealth v. Spivey*, 1330 EDA 2016, Docket Sheet (Pa. Super.) (entry dated Sept. 15, 2016). After holding the hearing, Judge McDermott granted Spivey's motion to proceed *pro se*. *Commonwealth v. Spivey*, CP-51-CR-0000470-2012, Order (Phila. C.C.P. Nov. 16, 2017); *see also* N.T. 9/30/16.[2]

On appeal [from the denial of his PCRA petition], Spivey claimed:

1. The PCRA court erred by not allowing newly retained counsel to amend the PCRA petition when the petition was defective as filed,

2. Spivey was denied his right to counsel on his first PCRA petition where the amended petition did not comport with Pennsylvania Rule of Criminal Procedure 902,

3. Trial counsel was ineffective for failing to challenge the affidavit of probable cause which omitted reference to the victim and cousin having a weapon, and

4. Trial counsel was ineffective for failing to call Tauheed Hood, Spivey's mother, and Spivey to testify.

*Commonwealth v. Spivey* [(*PCRA App. I*)], No. 1330 EDA 2016, Memorandum, 2018 WL 653764, at *2–3 (Pa. Super. Feb. 1, 2018) . . . . The

---

[2]    There was some confusion in the Superior Court whether Judge McDermott held the <u>Grazier</u> hearing, *see Commonwealth v. Spivey*, 1330 EDA 2016, Memorandum, 2017 WL 5256392 (Pa. Super. Nov. 13, 2017) (remanding again to hold hearing or file transcript), but the transcript confirms that she did.

Superior Court affirmed the denial of PCRA relief. *Id.* at *8. Spivey did not seek further review.

On April 19, 2018,[3] Spivey filed this timely petition[4] for habeas corpus claiming:

1.  The trial court erred and violated his due process rights in failing to charge on justification/self-defense and manslaughter,

2.  The trial court erred and violated his due process rights in failing to give a cautionary instruction to negate prejudicial comments by the prosecutor,

3.  The trial court erred and violated his due process rights when the court would not permit full and fair impeachment of a Commonwealth witness showing his potential bias in the case,

4.  Trial counsel was ineffective for failing to fully investigate potential witness Tauheed Hood,

5.  Trial counsel was ineffective for failing to call a detective to introduce Mr. Hood's statement,

6.  Trial counsel was ineffective for providing advice that vitiated a knowing and intelligent waiver of his right to testify,

7.  Trial counsel was ineffective for failing to question the detective as to why the Commonwealth's key witness was not charged with being a felon in possession of a firearm,

8.  The cumulative effect of trial counsel's errors denied him a fair trial, and

---

[3]     The federal court employs the "mailbox rule," deeming a pro se petition filed when it is given to prison authorities for mailing. *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (citing *Houston v. Lack*, 487 U.S. 266 (1998)). Although the petition was not docketed in this court until April 25, 2018, Spivey dated his petition April 19, 2019, and I will use that as the filing date.

[4]     The District Attorney does not dispute that Spivey filed his petition within the one-year limitations period. *See* Doc. 17; 28 U.S.C. § 2244(d). Spivey's conviction became final on March 24, 2014, when the time for seeking review in the Pennsylvania Supreme Court expired. *See Kapral v. United States*, 166 F.3d 565, 570 (1999) (conviction becomes final when time expires to seek next level of review on direct appeal); Pa. R. App. P. [1113] (requiring petition for allowance of appeal to be filed within 30 days). On September 8, 2014, 168 days later, the habeas limitations period tolled when Spivey filed a PCRA petition. The limitations period resumed running on March 5, 2018, when the time expired for seeking review of the Superior Court's affirmance of the denial of PCRA relief. With 197 days remaining, Spivey's habeas petition was due no later than September 18, 2018, making his April 19, 2018 filing well within the deadline.

> 9. Trial counsel was ineffective for providing advice that vitiated a knowing and intelligent decision not to call Tauheed Hood.
>
> Doc. 1 ¶ 12, GROUNDS ONE–NINE. Spivey concedes that claims four through nine were not exhausted in the state courts, but argues that this was due to PCRA counsel's ineffectiveness and that *Martinez v. Ryan*, 566 U.S. 1 (2012), allows the federal court to hear these claims. Doc. 1 at 18. The District Attorney argues that all of Spivey's habeas claims are procedurally defaulted and meritless. Doc. 17. Spivey filed a reply. Doc. 20.

(R&R 2–6.) The case was referred to Judge Hey, who appointed the Federal Community Defender Office to represent Spivey with respect to Claim Six. (*Id.* at 6.) Appointed counsel filed a brief on the applicability of *Martinez*, 556 U.S. at 1, and requesting an evidentiary hearing on trial and PCRA counsels' effectiveness. (ECF 23.) On November 18 and 22, 2019, an evidentiary hearing was held on the issues of trial counsel's advice that Spivey not testify in his own defense and whether PCRA counsel was ineffective for failing to raise the claim in the state proceeding. (ECF 31, 32.)

Judge Hey issued an R&R recommending denial of Spivey's petition. (ECF 38.) Spivey filed objections with respect to claims two through nine, and moved to amend his petition to add a claim of actual innocence based on testimony from three eyewitnesses. (ECF 44, 50, 51, 55, 60, 62.) The case was stayed and held in abeyance so Spivey could present his actual innocence claim to the state courts in the first instance. (ECF 58.) The PCRA court rejected the new claim as untimely, and the Superior Court affirmed. *Commonwealth v. Spivey* (*PCRA App. II*), 285 A.3d 930 (Pa. Super. Ct. 2022) (table). Spivey did not appeal the denial to the Pennsylvania Supreme Court, and the Court lifted the stay in February of 2023 and permitted appointed

counsel to file supplemental briefing on the impact of the Supreme Court's decision in *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022).  (ECF 70, 75.)

II

The Antiterrorism and Effective Death Penalty Act of 1996 requires that prisoners "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before seeking federal habeas relief.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also* 28 U.S.C. § 2254(b).  "In Pennsylvania, a defendant 'exhausts his state remedies for a federal claim either by raising the claim on direct appeal or in a petition for collateral relief under the PCRA.'"  *Bennett v. Superintendent Graterford SCI*, 886 F.3d 268, 280 (3d Cir. 2018) (quoting Wilkerson v. Superintendent, 871 F.3d 221, 228–29 (3d Cir. 2017)).  "A claim is exhausted if it was 'fairly presented' to the state courts"—meaning that the petitioner "presented the same factual and legal basis for the claim to the state courts."  *Nara v. Frank*, 488 F.3d 187, 198–99 (3d Cir. 2007).  "A petitioner can 'fairly present' his claim through:  (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation."  *Id.* at 198.

A corollary to the exhaustion requirement is the rule that a federal court ordinarily "may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule," including a state-law time-bar.  *Davila v. Davis*,

8

137 S. Ct. 2058, 2064 (2017).  Procedural default may be excused, however, if the petitioner can show "cause" for the default and "actual prejudice" if the federal court were to decline to hear his claim, or if he can demonstrate that his is within the "narrow class of cases . . . implicating a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995) (quotation omitted) (alteration in original).  "Cause" requires "some objective factor external to the defense [which] impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

A federal court may not grant a writ of *habeas corpus* "with respect to any claim that was adjudicated on the merits in State court proceedings unless" the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court ruling is "contrary to" clearly established federal law if it "(1) 'contradicts the governing law set forth in [the Supreme Court's] cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" *Gibbs v. Frank*, 387 F.3d 268, 272 (3d Cir. 2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)) (cleaned up).  A state court's application of clearly established federal law is unreasonable if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  An application of law that is incorrect but not unreasonable cannot be the basis for habeas relief.  *Id.*

at 411.  "The test for § 2254(d)(2)'s "unreasonable determination of facts" clause is

whether the petitioner has demonstrated by "clear and convincing evidence" . . . that

the state court's determination of the facts was unreasonable in light of the record"

before the state court.  *Rountree v. Balicki*, 640 F.3d 530, 537–38 (3d Cir. 2011) (citing

*Rice v. Collins*, 546 U.S. 333, 338–39 (2006)); *see also Cullen v. Pinholster*, 563 U.S. 170,

181 (2011).

The Court reviews *de novo* those portions of an R&R to which a party objects.  28

U.S.C. § 636(b)(1)(C).  "Although [the] review is de novo, a [district judge] [is]

permitted, by statute, to rely upon the magistrate judge's proposed findings and

recommendations to the extent [the judge], in the exercise of sound discretion, deem[s]

proper."  *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing *United States v.

Raddatz*, 447 U.S. 667, 676 (1980)).  Furthermore, "[o]bjections which merely rehash an

argument presented to and considered by a magistrate judge are not entitled to de novo

review."  *Gray v. Delbiaso*, No. 14-4902, 2017 WL 283461, at *4 (E.D. Pa. June 30,

2017).


## III

The first claim in Spivey's petition challenged the trial court's failure to instruct

the jury on justification or self-defense.  (Ptn. ¶ 12, ECF 1.)  He does not object to the

R&R's conclusion that his due process claim was unexhausted and not meritorious.

Instead, after the R&R issued, Spivey moved multiple times to amend, and later—

without the Court ruling on the motions—amended his petition to add a freestanding

claim of actual innocence based on "newly available" testimony of three eyewitnesses.

(ECF 50, 54, 55, 60, 62.)  The case was stayed so that Spivey could first present the

claim to the state courts.  (ECF 58.)  The PCRA court held an evidentiary hearing and found that the claim was untimely because the evidence was not "newly discovered" as required by Pennsylvania's Post-Conviction Relief Act, and dismissed the petition without reaching the merits.  PCRA App. II, 285 A.3d 930.  The Pennsylvania Superior Court affirmed, *id.*, and Spivey did not appeal to the Pennsylvania Supreme Court.

Spivey claims in his purported amended petition that he is entitled to habeas relief because he is actually innocent of first-degree murder.  He argues that testimony from Antoine Wilson, Marques Lawrence and Quinzell Anderson establishes that he was acting in self-defense when he shot Guy.  (ECF 50, 54, 55, 60, 62.)

Spivey's actual innocence claim is futile and, in any event, would fail on the merits.  The Supreme Court has never recognized the availability of habeas relief based on a freestanding actual innocence claim in a non-capital case.  If such relief were available, the Third Circuit has suggested, the petitioner would have to at least meet the "gateway" standard from *Schlup v. Delo*, 513 U.S. 298 (1995), for excusing procedural default.  *Wright v. Superintendent Somerset SCI*, 601 F. App'x 115, 119 (3d Cir. 2015).  Under this standard, Spivey would have to "show by a preponderance of the evidence that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  *Reeves v. Fayette SCI*, 897 F.3d 154, 160–61 (3d Cir. 2018) (quotation omitted).  He has not met this lower yet "demanding" standard. *Id.* at 161.

Imperfect self-defense under Pennsylvania law "exists where the defendant actually, but unreasonably, believed that deadly force was necessary." *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. Ct. 2012).  Both self-defense and imperfect self-

defense are unavailable where the defendant "provoked the incident" or "could retreat

with safety." *Id.* Spivey asserts that, if allowed to testify, Quinzell Anderson would say

that

> he was with Petitioner and Antoine Wilson on the day of the shooting. The
> three of them were in a car. Petitioner and Antoine Wilson got out of the
> car, and he stayed in the vehicle. He saw two men come out of an alley.
> One man had a gun. The man pointed the gun at Spivey and Antoine
> Wilson. He ducked down in the backseat and heard shots but didn't see
> what happened. When the shooting stopped he got out and ran to Broad
> Street where he called a friend to pick him up.

(PCRA Ptn. ¶ 11, Ex. A, ECF 56.) Spivey also submits a report of his investigator's

interview with Marques Lawrence stating that

> on the day of the homicide [Lawrence] . . . and Spivey had gone to
> breakfast . . . . [O]nce they returned to 4421 they sat on the steps of a
> residence, but was not sure of the exact address. He stated that he got up
> and went inside 4421 and when he came back out he observed Spivey and
> two males arguing and screaming at each other. He stated that Robert was
> still in front of 4421 and the two males were across the street. He stated
> that the males came on the block from Cayuga Street and that he
> recognized one male as his cousin, Alonzo Guy. He did not recognize the
> second male. He stated that he saw a male point a gun at Spivey, and
> claimed to have heard "clicking sounds", stating that the weapon did not
> fire. He stated the males began to run, and that Spivey pulled his gun as
> the males were running and fired his weapon from the steps where he was
> originally seated, ultimately striking the victim.

(*Id.* at p. 10.) Finally, he includes an affidavit from Antoine Wilson stating that

> I was with Robert Spivey on Cleveland St., July 7, 2011, when a shooting
> occurred. There were a lot of people out there when the shooting happened.

and

> We were sitting on the steps of an abandoned house when two guys walked
> towards us and one of them pulled a gun out and pointed it at Robert
> Spivey. Afraid he was going to shoot at us, Spivey pulled his gun out and
> started shooting. The two guys turned and ran. I don't think the guy who
> ran fired his gun.

(*Id.* at p. 12.)  All three witnesses would agree that Spivey was not the first to point his weapon.  But Anderson did not see the shooting, and Wilson and Lawrence would contradict one another about whether Harvin and Guy fled before or after Spivey started shooting—leaving unsettled the question of Spivey's opportunity to retreat. Spivey has not shown that it is more likely than not that no reasonable juror would convict based on the additional testimony, so his actual innocence claim is meritless.

IV

A

In Claim Two, Spivey argues he was denied his Fourteenth Amendment right to due process when the "trial court failed to give cautionary instructions to [the] jury to negate prejudicial comments by [the] prosecutor."  (Pet. at ECF p.7.)  Specifically, he says the trial court should have instructed the jury to disregard the prosecutor's statement during closing argument that "[Spivey] never goes back to that block because he knows he just did that murder.  The police may not be looking for him yet because they're still investigating, but he knows.  He knows Jermaine knows.  I'm sure other people know."  (Trial Tr. vol. 3, 280:14–20.)[5]

Judge Hey recommended finding that this claim was properly exhausted because, although Spivey did not couch it as a due process claim on direct appeal, the Superior Court analyzed the comment under the prosecutorial misconduct framework, which involves the same "fundamental fairness" inquiry as a due process claim.  The Court agrees and will therefore review the state courts' merits determination.

---

[5]     The trial court sustained the defense's objection to this comment.  (Trial Tr. vol. 3, 280:21–22.)

On direct appeal, the Pennsylvania Superior Court held that the prosecutor's comment was not prejudicial and that the trial court did not err in deciding not to issue a curative instruction, particularly in light of its instruction to the jury that statements by counsel are not evidence. *Spivey II*, 2014 WL 10980149, at *9. In determining whether prosecutorial misconduct denied the defendant a fair trial, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir. 2001).

The state courts determined that the prosecutor's remark, to the extent it was not a reasonable inference from the evidence, was not severe "given the speculative and fleeting nature of the comment." *Spivey I*, 2013 WL 9681831, at *6. The trial court declined to issue a curative instruction, reasoning that drawing further attention to the passing comment would unnecessarily magnify, rather than mitigate, its effect on the jury. *Id.* The Superior Court agreed that the curative instruction was unnecessary, particularly given the trial court's "repeated[ ]" instructions to the jury that statements by counsel are not evidence. *Spivey II*, 2014 WL 10980149, at *9. Federal courts applying Supreme Court precedent have reached similar conclusions. *See, e.g.*, *United States v. Wood*, 486 F.3d 781, 789 (3d Cir. 2007) ("Though it is true that the district court did not charge the jury with an expressly curative instruction, it did state to the jury that opening and closing statements made by counsel were not considered evidence, and that the jury must base its verdict on only the evidence presented."). The quantum of evidence in this case, including testimony by three witnesses to the murder,

14

was sufficiently strong to support the conviction when compared to the prosecutor's fleeting comment. The state courts' conclusion was neither contrary to, nor an unreasonable application of, Supreme Court precedent.

B

Spivey argues in Claim Three that the trial court violated his right to confront witnesses by precluding him from cross-examining Harvin on the penalty for first-degree murder. Spivey exhausted this claim by presenting it to the state court as a Sixth Amendment claim on direct appeal, even though he couches it in terms of due process in his habeas petition.

At trial, the defense attempted to impeach Harvin with evidence that he was motivated to testify by fear of being charged with murder and carrying a gun. The trial court permitted the line of inquiry, but prohibited him from asking Harvin what the penalty was for first-degree murder. The Sixth Amendment's Confrontation Clause guarantees a criminal defendant's right to cross-examine witnesses, including on bias and motive for testifying. *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79 (1986). "Despite this guarantee, trial judges retain 'wide latitude to impose reasonable limits on cross examination,' which a defendant may overcome by showing that, had the proposed line of inquiry been permitted, the jury 'might have received a significantly different impression of the witness's credibility.'" *United States v. Noel*, 905 F.3d 258, 267–68 (3d Cir. 2018) (quoting *id.* at 679–80) (cleaned up).

On direct appeal, the Superior Court held that the trial court did not abuse its discretion because it "did not prevent [Spivey] from exploring Mr. Harvin's motives for

15

identifying [Spivey] as the shooter, but only from discussing the possible penalty for

first degree murder"—the charge for which Spivey was being tried—"on the grounds

that matters of sentencing and possible penalties were not for the jury to consider."

*Spivey II*, 2014 WL 10980149, at *8.  On cross-examination, defense counsel elicited

testimony that Harvin believed he could have been charged with carrying a gun and, if

the Commonwealth believed he was the initial aggressor, with murder.  Counsel also

questioned Harvin about the seriousness of the charges and their potential to affect his

testimony:

> Q:    . . . .  In this case, were you charged with carrying a gun?
> A:    No.
> Q:    You know you could have been, right?  That's why you supposedly didn't give the statement.
> A:    Yes.
> Q:    Were you charged with attempted murder?
> A:    No.
> Q:    Were you charged with murder itself?
> A:    No.
> Q:    You were aware, sir, that if the Commonwealth so believed and they believed that you were the first person to attempt to shoot someone and they protected them and shot back, you could be arrested for the murder of the person who got shot accidentally.  You're aware of that, right?
> A:    Yes.
> Q:    It gives you a pretty strong incentive to say that my client shot first, wouldn't it?
> A:    If you say so.
> Q:    Well, sir, you were so scared to even get arrested for a gun charge. You would of course be even more scared to get charged with murder one, wouldn't you?
> A:    Right.
>                                        * * *
> Q:    And you were so scared of getting a gun pinch that you didn't even go to the police for a couple of days?
> A:    Right.
> Q:    You were so scared of getting a gun pinch, you lied to the police originally?
> A:    Yes.

16

(Trial Tr. vol. 2, 250:22–252:19.)  The jury would intuitively understand the seriousness of a murder charge.  It also heard Harvin's testimony that he lied to the police because he was afraid of picking up a gun charge and that he would be "even more scared to get charged with murder."  (*Id.*)  Testimony on the precise penalty for a murder conviction would not have given the jury a significantly different impression of Harvin's credibility, so the Superior Court's holding is not contrary to or an unreasonable application of Supreme Court precedent.

V

To prevail on an ineffective assistance of counsel claim, a habeas petitioner must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The deficiency prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  "Judicial scrutiny of counsel's performance" is "highly deferential."  *Id.* at 689.  Counsel's performance is presumed to have been effective and will not be found deficient unless it was unreasonable "under prevailing professional norms."  *Id.* at 688–89.  To overcome the presumption of effectiveness, a "petitioner must show either that:  (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy."  *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).  In *Thomas*, the Third Circuit identified a "tiered structure with respect to *Strickland*'s strategic presumptions.  At first, the presumption is that counsel's conduct might have been part of a sound strategy.  The [petitioner] can rebut this 'weak' presumption by showing either that the

17

conduct was not, in fact, part of a strategy or by showing that the strategy employed was unsound." *Id.* at 499–500 (internal footnote omitted).  If "the record does not explicitly disclose trial counsel's actual strategy or lack thereof . . . , the presumption may only be rebutted through a showing that no sound strategy posited by the Commonwealth could have supported the conduct." *Id.* at 500.  "However, if the Commonwealth can show that counsel actually pursued an *informed* strategy (one decided upon after a thorough investigation of the relevant law and facts), the 'weak' presumption becomes a 'strong' presumption, which is 'virtually unchallengeable.'" *Id.* (quoting *Strickland*, 466 U.S. at 690).

To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted).  On habeas review of a state court's ineffective assistance determination, the question before the Court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*  A court may address the *Strickland* prongs in any order and need not address both "if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

## A

Spivey contends in Claim Four that trial counsel rendered ineffective assistance by failing to investigate potential witness Tauheed Hood before trial.  He raised and

fully briefed the issue of counsel's failure to investigate in his original *pro se* PCRA petition.  (Sept. 8, 2014 PCRA Ptn. 7–9.)  But subsequently-appointed PCRA counsel filed an amended petition which did not address trial counsel's failure to investigate. *See* (Jan. 6, 2016 Am. PCRA Ptn.).  The PCRA court therefore did not have the opportunity to review this claim.

A habeas petitioner can establish cause to excuse a defaulted ineffective-assistance-of-trial-counsel claim "where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland* . . . ."  *Martinez*, 566 U.S. at 14.  "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim . . . has some merit."  *Id.*

The failure to raise the issue to the PCRA court cannot be excused under *Martinez* because there is no merit to the claim that trial counsel failed to investigate Hood—the record shows counsel did just that.  While counsel referenced in his opening that Hood might testify, (Trial Tr. vol. 2, 52:9–19), at a subsequent sidebar, he evidenced his familiarity with Hood's demeanor, the substance of his statement to police, and the strategic considerations underlying the decision about whether to put him on the stand.  (*Id.* at 68–70.)  Counsel for both sides, based on their investigations, had concerns about whether Hood would help or hurt their case.  (*Id.* at 68:20–22 (prosecutor stating "I know Mr. Hood is going to go south whoever calls him")).  Not only does the record show that trial counsel investigated Hood as a witness, it also reflects the kind of strategic decision to which courts owe significant deference under *Strickland*.  Finally, Spivey was colloquied on the decisions not to call Hood and not to

testify in his own defense.  During the colloquy, trial counsel stated that he had met

with Hood in person during the lunch break for approximately forty-five minutes, and

that based on the meeting he believed that Hood would not cooperate if called as a

witness.  (Trial Tr. vol. 3, 180:8–19.)  Spivey has not established trial counsel's

performance was deficient under *Strickland*, so the Court cannot excuse the failure to

present this claim to the state courts in the first instance.

B

Relatedly, in Claim Nine, Spivey argues that trial counsel vitiated his knowing

and intelligent decision not to call Hood as a witness by erroneously advising him that

the Commonwealth had not met its burden of proof.  Although his Amended PCRA

Petition and PCRA appeal couched the issue in simpler terms—that trial counsel was

ineffective for failing to call Hood as a witness—Spivey presented the "knowing and

voluntary" flavor of his argument in response to the PCRA court's Rule 907 Notice.

(PCRA Op. I at 10.)  Spivey argues that the state court did not address counsel's

erroneous advice; its "primary reason for denying this claim was on the colloquy . . .

[which] never discussed petitioner and trial counsel's discussion as to what made trial

counsel not want to call Hood."  (Ptr.'s Objs. to R&R 9, ECF 51.)  Spivey's assertion is

contrary to the clear record.  The PCRA court reviewed the colloquy in which trial

counsel explicitly laid out the substance of his advice not to call Hood, and Spivey

agreed with his characterization.  It held based on that exchange that Spivey knowingly

and voluntarily agreed with the decision not to call Hood.  (PCRA Op. I at 10.)  Because

the PCRA court considered the same legal argument with the same factual

underpinnings Spivey presents in his habeas petition, the claim is exhausted and

20

*Strickland*'s "doubly deferential" standard of review applies to the state court's denial of the claim on the merits.

The PCRA court held, and the Pennsylvania Superior Court agreed, that counsel was not ineffective in advising Spivey not to call Hood as a witness.  Trial counsel explained on the record the basis for his recommendation not to call Hood, and Spivey agreed with the recommendation:

| | |
|---|---|
| Mr. DiClaudio: | . . . .  Some of what Mr. Hood says may be beneficial to my client.  Some of what Mr. Hood says is detrimental to my client.  In addition to that, Mr. Hood is going to be ornery, defensive and non-cooperative both to the Commonwealth and myself. |
| | It is my opinion and I've given it to my client that this witness will not help our case, but I told him ultimately the decision whether to call Mr. Hood or not is his decision, ultimately.  My client has agreed that for strategic reasons we're not going to call Mr. Hood this morning.  The defender who represented Mr. Hood was kind enough to meet with me.  I met with Mr. Hood personally at the lunch break for about forty-five minutes . . . and discussed what he may or may not say.  He appeared to be very uncooperative and apprehensive. |
| | For those reasons, is it correct, Mr. Spivey, that you agree with my decision not to call Mr. Hood? |
| The Defendant: | Yes. |
| The Court | And Mr. Spivey, just so we're clear, you know what your attorney may or may not argue.  I'm sure he's discussed that with you.  But one of the issues that we were having and you know that I let your attorney explore certain issues because there was a suggestion, a suggestion in the statement from Mr. Hood—I'm not saying it was positive or automatic—but a suggestion possibly upon which your attorney could have specifically asked for a justification or a self defense instruction and I just want to make sure that Mr. DiClaudio discussed that with you. |
| The Defendant: | Yes. |

* * *

| | |
|---|---|
| The Court: | . . . .  Do you agree with [your attorney] with his decision not to call Mr. Hood? |
| The Defendant: | Yes. |

| The Court: | Do you feel that you had sufficient information and consultation with your attorney to make that decision? |
| The Defendant: | Yes. |

(Trial Tr. vol. 3, 179:15–183:22.)  The PCRA court relied on the "well-settled" Pennsylvania rule "that an ineffectiveness claim will fail" where the Petitioner knowingly, intelligently and voluntarily "agreed with trial counsel's decision not to call the witness in question."  *Id.* (citing *Commonwealth v. Paddy*, 800 A.2d 294 (Pa. 2002)). It reasoned that

> the record clearly reflects that the Petitioner made a knowing, intelligent, and voluntary decision not to present Hood as a witness.  N.T. 3/07/13 at 1–12, 179–81, 183.  Trial counsel also had a reasonable basis for not presenting Hood, and the Petitioner—well aware of Hood's potential detrimental testimony—agreed with trial counsel's assessment.  *Id.* at 1– 12, 179–81, 183.  This Court also confirmed with the Petitioner that he had had sufficient information and consultation with his attorney to make that decision.  *Id.*  Further . . . the Petitioner agreed with trial counsel on the record that no more witnesses needed to be seen, interviewed, or called, which would have included . . . Hood.  N.T. 3/4/13 at 1–12.

(PCRA Op. I at 10.)  The rule relied upon by the PCRA court is not contrary to Supreme Court precedent, nor is the court's conclusion an unreasonable determination of facts or application of the law to the facts.  *See Richburg v. Superintendent Houtzdale SCI*, No. 19-1768, 2022 WL 218758, at *3 n.4 (3d Cir. Jan. 25, 2022) (nonprecedential).

C

In his fifth claim, Spivey argues trial counsel was ineffective for failing to call Detective White to introduce Hood's statement as substantive evidence to support Spivey's self-defense claim.  The Court need not address exhaustion because the claim is meritless.  *See* 28 U.S.C. § 2254(b)(2).

Spivey believes White would have testified that Hood told him Harvin approached Spivey with his gun drawn.  That statement, when introduced through

White, is hearsay because it is offered to prove that Harvin was the first to draw a weapon. Pa. R. Evid. 801(c). Spivey argues that the statement would have been admissible if Hood was called as a witness and refused to cooperate. (Ptr.'s Suppl. to Objs. to R&R, ECF 50.) Generally, a prior inconsistent statement by a declarant-witness is not admissible as substantive evidence to prove the truth of the matter asserted. *Commonwealth v. Lively*, 610 A.2d 7, 9 (Pa. 1992). The statement may come in as substantive evidence, however, if it "(A) was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition; (B) is a writing signed and adopted by the declarant; or (C) is a verbatim contemporaneous electronic recording of an oral statement." Pa. R. Evid. 803.1(1). Hood's police interview was transcribed, and his signature appears at the bottom of each page. (Sept. 8, 2014 PCRA Ptn., Ex. A.) But prior inconsistent statements are only admissible if the declarant testifies and is subject to cross-examination about the statement; the evidence could not come in through Detective White.

Spivey alternatively argues that the statement might have been admissible under Pennsylvania Rule of Evidence 804. It could not have been admitted under that rule. Rule 804(b)'s hearsay exceptions only apply to prior trial, hearing or deposition testimony; deathbed statements; statements of personal or family history; and statements against a party that wrongfully procured the witness's unavailability. Hood's statement to police does not fall within any of these categories. Because the evidence was inadmissible, counsel did not perform deficiently by not attempting to introduce it.

Even if it could come in as substantive evidence, Spivey was not prejudiced by the absence of Hood's statement.  In his statement to the police, attached to Spivey's initial PCRA Petition, (Sept. 8, 2014 PCRA Ptn., Ex. A), Hood described the initial argument in which Spivey threatened Guy as occurring the same day as the shooting, a few hours before Guy was killed.  He also described the shooting:

> Then I came back onto Cleveland Street and was in the middle of the block sitting on the step across the street from where this happens, I was at the same spot that I was earlier that day.  That's where I wait when I'm getting weed from my guy.  There's an alleyway directly across the street from where I was sitting I see Tweet[6] and Lonnie come out of the alleyway and I saw Tweet had his arm down by his side and he was holding a gun and he was peeking around the alleyway.  Then I saw Beano driving down Cleveland Street . . . and Lonnie and Tweet come out of the alleyway.  Then Beano got out of the car with a gun in his hand and was pointing it towards where Lonnie and Tweet were standing and Tweet was pointing his gun at Beano.  Then Beano went around the front of the car and goes around the passenger side and then keeps going around to the back of the car.  Then I saw Tweet start running and then I see Beano start shooting in the direction of Tweet and Lonnie.  Tweet was already taking off and Lonnie was starting to run too and I see Lonnie fall when the gunshots were going off.

(*Id.*)  Hood's statement indicates that Spivey had the opportunity to avoid the altercation or to retreat, which would preclude a finding of imperfect self-defense.  Spivey has not shown a reasonable probability that the result would have been different had the statement been introduced.

### D

In Claim Seven, Spivey argues that trial counsel was ineffective for failing to question a detective about why Harvin was not charged for carrying a gun.  The Court need not address exhaustion or deficient performance because the claim fails on the

---

6      Later in his statement, Hood clarified that Jermaine Harvin's nickname was "Tweet," that Alonzo Guy went by "Lonnie," and that Spivey's nickname was "Beano."

merits under *Strickland*'s prejudice prong. *See* 28 U.S.C. § 2254(b)(2); *Strickland*, 466 U.S. at 697.

Harvin testified that he knew he could have been charged for carrying a gun and that he lied to the police because he was "scared of getting a gun pinch." (Trial Tr. vol. 2, 250:22–251:4 (cross), 145:5–8 (direct)). Spivey does not suggest that the detective would have testified to any additional facts. Even assuming the detective would have testified that Harvin was not charged because he testified against Spivey, Spivey has not shown a reasonable likelihood that the result of the trial would have been different. The jury knew, from Harvin's own testimony, that he believed he could be charged for carrying a weapon, and that he could have been motivated to testify against Spivey because he did not want to be charged. Given this exploration of Harvin's potential bias, a detective's testimony about prosecutorial determinations would have added little to defense counsel's attempt to discredit Harvin.

### E

In Claim Six, Spivey argued that trial counsel was ineffective because his erroneous advice vitiated Spivey's knowing and intelligent waiver of the right to testify in his own defense. In his original habeas petition, Spivey said trial counsel advised him not to testify because his criminal record could be used against him. (Ptn. p. 17.) But in his reply brief, Spivey additionally stated that trial counsel advised him not to take the stand because the Commonwealth had not met its burden of proof. (Reply Br. 17, ECF 20.) Because the new allegation arises out of the same transaction or occurrence as the original—namely, the meeting in which trial counsel advised Spivey

25

not to take the stand—the Court agrees with Judge Hey and the parties that it is not

untimely.  *See Mayle v. Felix*, 545 U.S. 644, 649 (2005).

In reviewing Spivey's first PCRA petition, the state courts considered whether

trial counsel was ineffective for failing to call Spivey to the stand in order to establish

justification or self-defense.  PCRA App. I, 2018 WL 653764, at *7.  But Spivey concedes

that the claim presented in his habeas petition is procedurally defaulted because the

same factual basis—counsel's advice not to testify—was not presented to the state

courts.  (Ptn. p. 18.)  He argues, however, that the default should be excused because

PCRA counsel was ineffective for failing to raise the argument.  (*Id.*)  The Court need

not analyze PCRA counsel's effectiveness under *Martinez*, 566 U.S. 1, and *Shinn v.

Ramirez*, 142 S. Ct. 1718 (2022), because Spivey's claim fails on the merits.

Judge Hey held an evidentiary hearing on November 18 and 22, 2019, to

determine whether trial counsel was ineffective in advising Spivey not to testify, and

whether PCRA counsel was ineffective for not raising the claim before the state courts.

(ECF 31 & 32.)  Spivey and trial counsel—now-Judge Scott DiClaudio—both testified at

the hearing.  Judge Hey concluded, based on her assessment of their testimony, that

trial counsel did not advise Spivey that his criminal record could be used against him if

he testified.  (R&R 47.)[7]  She reasoned that

> At the time trial counsel represented Spivey, he had spent three or
> four hears as an assistant district attorney and an additional twenty years
> as a criminal defense attorney. [Evid. Hrg. Tr. vol. 1] at 5, 15.  Considering
> his experience at the time, the likelihood that he made such a mistake on a
> basic evidentiary question relating to a critical element of the trial is
> exceedingly remote.  I recognize that Spivey first made this allegation when

---

[7]      Under the Pennsylvania Rules of Evidence, only prior convictions for *crimen falsi* can be used
to impeach a witness.  Pa. R. E. 609(a).  At the evidentiary hearing, trial counsel acknowledged that
Spivey's prior convictions did not qualify as *crimen falsi* and could not have been used against him.
(Evid. Hrg. Tr. vol. 1, 9:22–25.)

he filed his *pro se* PCRA petition in September 2014, much closer in time to
the March 2013 trial than trial counsel's recent testimony, and that Spivey
has greater reason to remember the specifics of his own trial than trial
counsel, who had a busy criminal trial practice.  Nevertheless, these are not
sufficient for me to discount trial counsel's testimony.  Counsel recalled
some details of the case, including that he advised Spivey against testifying.
He had enormous experience both prosecuting and defending criminal
cases and knew the relevant evidentiary rule as a matter of course.  I agree
that he would not have advised Spivey that he could be impeached on the
basis of his convictions.

(*Id.* at 46–47.)  Spivey disagrees with Judge Hey's conclusion.  (Ptr.'s Counseled Objs. to

R&R 8, ECF 44.)  But Judge Hey evaluated Spivey and trial counsel's testimony regarding the

advice given, and determined that trial counsel was the more credible of the two.  (R&R 46–47,

59.)  Nothing in the Court's review of the record, including information submitted after the

evidentiary hearing regarding trial counsel's conduct as a judge and as a litigant, suggests that

Judge Hey got it wrong.[8]  The Court's confidence in her decision is bolstered by its review

of the trial transcript, in which trial counsel demonstrated his grasp of the *crimen falsi*

---

[8]        After the evidentiary hearing but before the R&R issued, habeas counsel told Judge Hey that
the Pennsylvania Judicial Conduct Board filed a misconduct complaint against Judge Diclaudio and
requested a stay pending the outcome of those proceedings.  (Mot. to Stay, ECF 36.)  The Judicial
Conduct Board complaint alleged that between 2015 and 2019, Judge DiClaudio failed to comply with
court orders related to a civil lawsuit against him, and that he provided inaccurate financial
disclosures from 2016 through 2019.  Compl., *In re DiClaudio*, No. 3 JD 2019 (Pa. Ct. Jud. Discipline
filed Dec. 20, 2019), *available at* https://judicialconductboardofpa.org/wp-content/uploads/12-20-2019-
Press-Release-Honorable-Scott-DiClaudio-Board-Complaint.pdf.   Counsel argued that the allegations
"would bear on Judge DiClaudio's character for truthfulness."  (Mot. to Stay ¶ 13.)  In her R&R, Judge
Hey recommended denying the motion because the allegations did not relate to "any misunderstanding
or misconstruction of a fundamental issue of evidence.   Considering trial counsel's many years of
practice at the time he represented Spivey as both a prosecutor and criminal defense attorney, the
findings of the Court of Judicial Discipline would not impact [her] decision on this issue."  (R&R 59.)
        After the R&R issued, the Judicial Conduct Board determined that Judge DiClaudio violated
the Pennsylvania Constitution and Code of Judicial Conduct.  *In re DiClaudio*, No. 3 JD 2019 (Pa. Ct.
Jud.        Discipline        Dec.        1,        2020),        *available        at*
https://www.pacourts.us/Storage/media/pdfs/20210513/013628-file-10801.pdf.   In light of the decision,
habeas counsel moved to reopen the evidentiary hearing to permit cross examination of Judge
DiClaudio on his litigation misconduct and financial misreporting.  (Mot. to Reopen Hrg., ECF 53.)
But this information is not relevant to Judge Hey's finding that, based on his extensive experience,
DiClaudio would not have made a mistake on a basic evidentiary issue.

rule in addressing the Commonwealth's motion *in limine* to preclude cross-examination with respect to Harvin's prior convictions.  (Trial Tr. vol. 2, 5:13–6:4.)

Trial counsel agreed at the evidentiary hearing that he would have advised Spivey not to testify based on his assessment of whether the Commonwealth had met its burden of proof, although he clarified that he would have told his client the Commonwealth had "potential[ly]" not met its burden.  (Evid. Hrg. Tr. vol. 1, 27:14–25.) The presumption that counsel was pursuing a sound strategy—and therefore did not perform deficiently—is at its zenith when the record shows counsel pursued a strategy "decided upon after a thorough investigation of the relevant law and facts."  *Thomas*, 428 F.3d at 500.

At the evidentiary hearing, trial counsel testified that he believed he could succeed on a self-defense strategy without Spivey's testimony.  He chose to present a self-defense theory because the alternative, mistaken identity, was not viable given how well the witnesses knew each other.  (Evid. Hrg. Tr. vol. 1, 28:20–29:6.)  Counsel stated that the Commonwealth only charged Spivey with first-degree murder, not with any lesser included offenses, and that "shooting someone with an imperfect self-defense wouldn't rise to the level of first or third degree [murder]."  (*Id.* at 29.)  Because of this "all-or-nothing" charging decision, trial counsel reasoned that the jury could have acquitted if it "believed that the other person was reaching for a gun, had a gun, or was about to harm my client."  (*Id.* at 28.)  The trial record corroborates this strategy.  In closing, trial counsel suggested that Harvin was not believable when he said he did not shoot first, and that if the jury believed Spivey could have been acting in imperfect self-defense, he could not be convicted of the crime charged.  (Trial Tr. vol. 3, 255:18–

28

256:25.)  Trial counsel argued that "the Commonwealth hasn't made their burden out beyond a reasonable doubt, because you will significantly pause.  You will significantly hesitate when evaluating the testimony of Mr. Harvin, and that pause or that hesitation is exactly what a reasonable doubt is.  You need more.  You should have heard more.  You have no more."  (*Id.* at 256:17–25.)

Trial counsel's testimony shows that he investigated the facts, law and possible defense strategies.  Given the circumstances of the case, it was reasonable to pursue an imperfect self-defense strategy.  It was also reasonable for counsel to believe he could succeed on that strategy without calling Spivey to testify, because he impeached Harvin—the only eyewitness to the shooting—on his bias and motive for testifying.

Spivey also has not shown that his case was prejudiced because he did not testify in his own defense.  At the evidentiary hearing, he testified to what he would have said had he taken the stand.  (Evid. Hrg. Tr. vol. 1, 45–50.)  There is not a reasonable probability that a jury would have credited his testimony because it conflicted with all the other witnesses' accounts of the event and with the physical evidence from the scene.  For example, he testified that his five- or six-year-old son was with him when Harvin and the victim approached, that Harvin and Guy both had guns and one of them was shooting, and that he blindly fired five shots in return.  (*Id.*)  No other witness testified to the child's presence before the shooting.  Even if the jury believed a father would engage in a shootout rather than pull his child to safety, the other witnesses and ballistic evidence established that only five shots were fired, all from the same gun.  Spivey has not shown a reasonable probability of a different result had he taken the stand.

F

In Claim Eight, Spivey raises the cumulative error doctrine.  Claims of cumulative error are subject to AEDPA's exhaustion requirement, *Collins v. Sec'y of Pa. Dep't of Corrs.*, 742 F.3d 528, 541 (3d Cir. 2014), and Spivey never presented this claim to the state courts and cannot do so now.

Even if he had exhausted the claim, it is without merit.  Under the cumulative error doctrine,

> Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process.  Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Id.* (quotation omitted).  Only Claim Seven was decided without a deficiency analysis; the Court found counsel's performance was not deficient on Spivey's other ineffective assistance claims.  Spivey cannot make out a claim of *cumulative* error without demonstrating that counsel performed deficiently in two or more respects.  Even if he had shown deficiency on all his ineffectiveness claims, he would be unable to show cumulative prejudice.  Had the trial gone the way Spivey now wishes it had, the jury would have heard testimony from Spivey, Hood, and a detective involved with the decision not to charge Harvin.  Neither Spivey's nor Hood's testimony would have helped Spivey's case—as discussed in Parts V.C and V.E, *supra*, Hood's testimony would have undermined the self-defense theory, and Spivey's testimony was, at best, uncorroborated and, more likely, so far-fetched that it would have undermined his credibility.  Spivey also has not shown that testimony about the decision not to charge

30

Harvin would have been anything other than cumulative with Harvin's own testimony that he had a strong incentive to blame Spivey for the murder out of fear of being charged for the crime himself.  All this evidence would not have cast Spivey's case in a light substantially more favorable to him, so Spivey's cumulative prejudice claim fails.

VI

Spivey objects to Judge Hey's denial of a certificate of appealability.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, reasonable jurists would not debate this Court's ruling, and Spivey has not made a substantial showing of a denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2).

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

GERALD J. PAPPERT, J.